# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
### CIVIL ACTION NO. 1:15-CV-00090-GCM

| | |
|---|---|
| MELISSA ANN MAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| CAROLYN W. COLVIN, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER** is before the Court on cross motions for summary judgment. Plaintiff Melissa Ann May filed her Motion for Summary Judgement (Doc. No. 15) and Memorandum in Support (Doc. No. 15-1) on November 1, 2015. Defendant Carolyn W. Colvin, Commissioner of the Social Security Administration, filed her Motion for Summary Judgement (Doc. No. 17) and Memorandum in Support on January 4, 2016. Finally, on January 22, 2016, Plaintiff filed her Response in Support. (Doc. No. 19) Plaintiff, through counsel, seeks judicial review of the Administrative Law Judge's determination, upheld by the Appeals Council, that she was not disabled within the meaning of the Social Security Act and thus was not entitled to Disability Insurance Benefits. For the following reasons, Plaintiff's Motion for Summary Judgment is **GRANTED**, Defendant's Motion for Summary Judgment is **DENIED**, and the Appeals Council's Decision is **VACATED.**

## I. BACKGROUND

On October 24, 2011, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (Tr. 89) On the same day, she also filed a Title XVI application

for supplemental security income. (Tr. 89) Plaintiff alleged a disability onset date of October 28, 2009 in both applications. (Tr. 89)

Plaintiff's applications were initially denied on February 15, 2012, and upon reconsideration on April 23, 2012. (Tr. 89) Subsequently, Plaintiff filed a written request for a hearing on May 31, 2012. (Tr. 89) A video hearing was held before Administrative Law Judge ("ALJ") Mary S. Lassy in Paducah, Kentucky on July 3, 2013. (Tr. 89) Plaintiff, represented by an attorney, appeared in Franklin, North Carolina. (Tr. 89) Plaintiff testified at the hearing, as did an impartial vocational expert. (Tr. 89)

On November 8, 2013, the ALJ issued a written opinion finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 86) On November 18, Plaintiff requested that the Appeals Council review the ALJ's determination. (Tr. 84) On March 16, 2015, the Appeals Council issued a written decision finding that Plaintiff was disabled during the relevant period. (Tr. 4-6) Thus, the Appeals Council's determination became the final decision of the Commissioner in this case. (Tr. 1)

Pursuant to 42 U.S.C. § 405(g) Plaintiff has a right to review of the Commissioner's decision. She timely filed this appeal on May 10, 2015. (Doc. No. 1) The parties' cross motions for summary judgment are now ripe for disposition.

## II. STANDARD OF REVIEW

Judicial review of a final decision of the Commissioner in Social Security cases is authorized pursuant to 42 U.S.C. § 405(g) and is limited to consideration of (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* District courts do not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Rather, they must uphold the decision of the Commissioner, even in instances where they would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). In reviewing for substantial evidence, a court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589. The ALJ, and not the Court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. *Hays*, 907 F.2d at 1456. The issue on appeal, then, is not whether Plaintiff is disabled, but whether the ALJ correctly applied the relevant law and reached a finding that is supported by substantial evidence.

### III. ANALYSIS

The ALJ's inquiry was whether Plaintiff was "disabled" between her alleged onset date of October 28, 2009 and the ultimate decision date, November 8, 2013. In order to review the ALJ's determination, this Court begins with the five step sequential evaluation process that each ALJ must use, pursuant to 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920, for deciding disability and supplemental security claims. If the ALJ determines that a claimant is conclusively disabled, or not disabled, at any step, the inquiry ends and the ALJ need not proceed to the other steps. Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medically determinable impairment or a combination of impairments

that is severe and meets the twelve month durational requirement set forth in 20 C.F.R. § 404.1509 and 20 C.F.R. § 416.909; (3) whether the claimant's impairment or combination of impairments meets or medically equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant has the residual functional capacity ("RFC") to perform the requirements of her past relevant work; and, if unable to perform the requirements of past relevant work, (5) whether the claimant is able to adjust to other work, considering her RFC and vocational factors (age, education, and work experience). If the claimant is able to adjust to other work, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i-v); *id*. § 416.920(g). The claimant bears the burden of production and proof during the first four steps of the inquiry. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work is available in sufficient numbers in the national economy which the claimant could perform. *Id.* at 1205 (citation omitted).

In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 28, 2009. (Tr. 91) At step two, she found that Plaintiff had the following severe impairments: apparent fibromyalgia, degenerative disk disease of the cervical spine, depressive disorder, anxiety disorder, and a history of drug/alcohol addiction, which was in remission. (Tr. 92) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals an impairment in the Listings. (Tr. 92) She explained that the "objective medical evidence does not support the existence of an impairment[] of listing level severity," because "[n]o treating, examining or nonexamining medical source has opined" that Plaintiff has such an impairment. (Tr. 92)

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c), except that she must avoid

4

all exposure to hazardous machinery and heights. (Tr. 92) The ALJ further determined that Plaintiff could "understand, remember, and carry out simple instructions," "sustain attention for simple tasks for extended periods," and "interact with co-workers in an object oriented work setting in which change is infrequent and gradually introduced." (Tr. 92) Accordingly, Plaintiff could perform her past relevant work as a vending machine stocker. (Tr. 98) In the alternative, the ALJ concluded that, considering Plaintiff's characteristics and RFC, there were also other jobs existing in significant numbers in the economy that Plaintiff could perform.

First, the ALJ noted that Plaintiff was 40 years old at the time of the hearing, and thus defined as a younger individual. (Tr. 99) Plaintiff also had a high school education and was able to communicate in English. (Tr. 99) Transferability of job skills, the ALJ explained, was not material to the analysis because the Medical-Vocational guidelines would support a finding of "not disabled" regardless of Plaintiff's job skills. (Tr. 99) Moreover, because Plaintiff's RFC entailed additional limitations, the ALJ asked the Vocational Expert to opine on the availability of jobs that a person with her characteristics and restrictions could perform. (Tr. 99) The Vocational Expert indicated that Plaintiff would be able to perform the requirements of representative occupations such as a hospital cleaner (16,800 jobs in North Carolina, 553,000 nationwide), janitor (17,000 jobs in North Carolina, 553,000 nationwide), order filler (5,200 jobs in North Carolina, 142,000 nationwide), kitchen worker, provided the hours were limited to nighttime only (2,500 jobs in North Carolina, 130,000 nationwide), and hand packer (17,000 jobs in North Carolina, 480,000 jobs nationwide). (Tr. 99-100) The ALJ found the Vocational Expert's testimony to be credible and consistent with the Dictionary of Occupational Titles. (Tr. 100) Accordingly, she determined that Plaintiff had not been under a disability, as defined in the Social Security Act, during the relevant period. (Tr. 100)

5

On November 8, 2013, Plaintiff requested that the Appeals Council review the ALJ's determination. (Tr. 84) On March 16, 2015, the Appeals Council issued a written opinion affirming the ALJ's ultimate determination that Plaintiff was not disabled between her alleged onset date and the ALJ's decision date. (Tr. 1) The Appeals Council Adopted the ALJ's findings under all five steps of the sequential evaluation. (Tr. 4) The Appeals Council also noted, however, that the ALJ's decision did not contain an evaluation of the North Carolina Department of Health and Human Services' determination that Plaintiff was eligible for Medicaid Disability benefits. (Tr. 5) The Appeals Council considered this determination but assigned it minimal weight for several reasons.

First, the decision of the State Hearing Officer did not provide a rationale for determining that Plaintiff had been disabled since December 2011. (Tr. 5) Additionally, there was no indication that the State Hearing Officer had any psychological or medical training. Thus, he was not considered an "acceptable medical source" under the applicable regulations. (Tr. 5) Finally, the Appeals Council noted that it was not bound by the determination of any other governmental agency, and indeed, the State Hearing Officer had explicitly acknowledged this fact, writing: "this decision in no way affects any pending or future claims for Social Security or Supplemental Security Income benefits." (Tr. 5) For these reasons the Appeals Council found that neither the state agency determination, nor any of the other new evidence provided by Plaintiff on appeal, supplied grounds for changing the ALJ's decision.

Plaintiff timely appealed the Appeals Council's decision on May 10, 2015. (Doc. No. 1) On November 11, 2015, Plaintiff filed a Motion for Summary Judgment (Doc. No. 15) and Memorandum in Support (Doc. No. 15-1). On January 4, 2016, Defendant Commissioner filed

her Motion for Summary Judgment (Doc. No. 17) and Memorandum in Support (Doc. No. 18). Finally, on January 22, Plaintiff filed a Response in Support. (Doc. No. 19)

In her memoranda, Plaintiff presents the following assignments of error: (1) new evidence presented to the Appeals Council warrants remand; (2) the ALJ failed to properly consider Plaintiff's low GAF scores. (Memorandum in Support at 20-28, Doc. No. 15-1)

**A. New evidence submitted to the Appeals Council**

Claimants who are denied benefits by an ALJ may submit new evidence when they request review by the Appeals Council. 40 C.F.R. § 404.968(a); *id.* § 404.970(b). The Appeals Council will consider evidence if it is new and material, and if it relates to the period on or before the date of the ALJ's hearing. *Id.* § 404.970(b). "Evidence is new 'if it is not duplicative or cumulative' and is material if there is a 'reasonable possibility that the new evidence would have changed the outcome.'" *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011) (quoting *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). The Appeals Council is permitted to "simply deny the request for review," without explaining its reasons for doing so, if the ALJ's action, findings, or conclusions are "not contrary to the weight of the evidence." *Id.* When the Appeals Council decides to consider the new evidence, this Court includes that evidence when determining whether the ALJ's determination is supported by substantial evidence. *Perry v. Colvin*, No. 3:14CV539, 2015 WL 5638215, at *3 (W.D.N.C. Aug. 31, 2015), *report and recommendation adopted*, No. 3:14-CV-00539-MOC, 2015 WL 5655718 (W.D.N.C. Sept. 24, 2015).

Here, the Appeals Council considered new evidence that Plaintiff submitted and thus this Court will determine whether substantial evidence supported the ALJ's finding in light of that new evidence. Plaintiff presented three pieces of new evidence to the Appeals Council: (1) a

March 20, 2014 CT scan of her cervical spine showing advanced C5-6 degenerative disc disease with disk narrowing and spur formation, but no acute cervical bony or soft tissue abnormality (Tr. 21); (2) a January 2, 2015 mental RFC evaluation conducted by Nancy O'Dell, LPC (Tr. 48-52); (3) a January 4, 2015 physical RFC evaluation by Dr. Teresa A. Heavner (Tr. 53-57).

The Appeals Council noted that the ALJ decided claimant's case through November 8, 2013, and concluded that all of the proffered new evidence related to a time after the relevant period. Thus, the new evidence did not affect the ALJ's determination. (Tr. 5-6) Plaintiff argues, however, that the new evidence should be given retrospective consideration pursuant to the principles set out by the Fourth Circuit in *Bird v. Commissioner of Social Security Administration*, 699 F.3d 337, 340-45 (4th Cir. 2012). In *Bird*, the Fourth Circuit explained that "medical evaluations made after a claimant's insured status has expired are not automatically barred from consideration and may be relevant to prove a disability claim arising before" that time, because it can be "reflective of a possible earlier and progressive degeneration." *Id.* at 340 (quotation marks and citation omitted). The Court also explained that when "a claimant's treating physician submit[s] a new assessment" but there is "no evidence that these impairments existed before . . . the evidence is not relevant" and retrospective consideration is not required.

It appears to the Court that the Appeals Council erred in concluding that Dr. Teresa Heavener's evaluation related to a later time, because Dr. Heavener was Plaintiff's treating physician during part of the relevant period. (Tr. 53) In her evaluation, Dr. Heaver ascribed the following diagnoses to Plaintiff: "HLAB27 mutation" of unknown significance, postconcussive syndrome resulting from a history of physical violence, depression and anxiety, and fibromyalgia. (Tr. 53) These impairments cause chronic pain, chronic panic attacks, and frequent crying." (Tr. 53) Dr. Heaver reported that Plaintiff experiences pain or other symptoms

8

severe enough to interfere with attention and concentration "constantly," that she can sit or stand for only 30 minutes at a time, that she can never lift less than 10 pounds, and that she has significant limitations in doing repetitive reaching, handling, or fingering. (Tr. 54-56) She suggested that plaintiff's panic attacks and personality issues would make it difficult to interact with the public or sustain attention in a productive work environment. (Tr. 56) Dr. Heavener opined that Plaintiff's limitations existed as early as 2011, based on her review of Plaintiff's earlier treatment with "Dr. Watras' (sic) practice." (Tr. 57) Dr. Heavener also opined that Plaintiff was not malingering. (Tr. 53)

However, the ALJ evaluated Plaintiff's medical records and determined that there was no evidence of severe limitations, that exam results showed normal functioning, and that Plaintiff had a history of malingering. For example, when she was examined by Dr. Burgess on February 8, 2012, she was found to have a normal stance and stable station. (Tr. 93) She could sit comfortably, walk on heels and toes, she had normal muscle strength, and a normal range of motion of the spine, shoulders, wrists, hips, and knees. (Tr. 93) Similarly, state agency program physicians found that she had the ability to perform medium exertional work activity. (Tr. 94-95) Additionally, the ALJ noted, Plaintiff would often begin treatment, receive medication, and then disappear. (Tr. 95, 97) On one instance, she apparently feigned stroke symptoms during a consultative examination. (Tr. 95-97) Thus, the ALJ found that Plaintiff's self-reporting of chronic, severe pain was not credible.

In sum, Dr. Heavener's evaluation creates a conflict in the record evidence. It represents the only evidence from a treating physician, and therefore would ordinarily be entitled to great weight. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Moreover, the ALJ noted the lack of treating sources (Tr. 97), and relied in part on the gaps in Plaintiff's treatments in reaching her

9

determination. (Tr. 94, 95, 97) Finally, although the Commissioner points out various record evidence that corroborates the ALJ's finding, other record evidence—including, but not limited to, Plaintiff's newly submitted evidence—supports Dr. Heavener's assessment. "Thus, no fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record. Assessing the probative value of competing evidence is quintessentially the role" of the ALJ. *Meyer*, 662 F.3d at 706. Thus, remand is required.

**B. GAF scores**

The GAF scale judges an individual's level of functioning only at the time of evaluation." *Carringer v. Colvin*, No. 2:13-CV-00027-MOC, 2014 WL 1281122, at *8 (W.D.N.C. Mar. 27, 2014) (citing American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 30 (4th ed. 1994)). It is, in other words, "a snapshot of functioning at a given moment." *Minish v. Astrue*, No. 1:12CV01, 2013 WL 1010437, at *4 (W.D.N.C. Mar. 14, 2013) (quoting *Fowler v. Astrue*, No. 1:10-cv-123, 2011 WL 5974279, at *3 (W.D.N.C. Nov. 29, 2011)). "A GAF score of 41-50 indicates that the person has serious symptoms or serious impairment in social, occupational or school functioning." *Id.* Nevertheless, scores in that range are not conclusive evidence that a claimant's mental impairments preclude her from all work. *Carringer*, No. 2:13-CV-00027-MOC, 2014 WL 1281122, at *8.

As this Court, and others, have recognized, the mere fact of a diagnosis does not speak to the severity of a Plaintiff's condition—rather, "there must be evidence that the impairment also impacted [his] ability to perform basic work activities." *Carringer*, No. 2:13-CV-00027-MOC, 2014 WL 1281122, at *8; *see also Pope v. Colvin*, No. 2:13-CV-00008-FDW, 2014 WL 944609, at *3 (W.D.N.C. Mar. 11, 2014) ("[A] GAF score is not dispositive of anything in and of itself

and has no direct legal or medical correlation the severity requirements of social security regulations."). For this reason, neither the regulations nor this Circuit's caselaw requires the ALJ to base its determination of a claimant's mental RFC wholly on GAF scores. *Pope*, No. 2:13-CV-00008-FDW, 2014 WL 944609, at *3. Nevertheless, when GAF scores come from an acceptable medical source they are medical opinions that the ALJ is required to consider and assign weight. *Kennedy v. Colvin*, No. 3:14-CV-665-RJC, 2016 WL 890602, at *4 (W.D.N.C. Mar. 8, 2016) (citing SSA, AM-13066, "Global Assessment of Functioning (GAF) Evidence in Disability Adjudication" (effective July 22, 2013)). Where an ALJ fails to mention a GAF score, but thoroughly reviews the evidence related to such score, such as the medical records in which it is contained, the failure may be harmless. *Love v. Astrue*, No. 3:11CV14-FDW-DSC, 2011 WL 4899989, at *5 (W.D.N.C. Sept. 6, 2011), *report and recommendation adopted*, No. 3:11-CV-014, 2011 WL 4899984 (W.D.N.C. Oct. 14, 2011)

In this instance, the record before the ALJ demonstrated that Plaintiff had been assigned low GAF scores on several instances when she sought medical treatment. On July 14, 2011, Plaintiff was admitted to the Appalachian Community Services Center and given a crisis assessment. (Tr. 390) During the assessment, she was assigned a GAF score of 40. (Tr. 394) A treatment plan for Plaintiff dated July 19, 2011—and apparently updated several times in December 2011—gives the same score. (Tr. 667) She sought treatment at the same service provider on May 23, 2012, and was assigned a GAF score of 41. (Tr. 654, 661)

The ALJ considered the reports from both of Plaintiff's visits to Appalachian Community Services in making her determination. As the ALJ explained, Plaintiff frequently presented at the clinic in high distress and undergo evaluations before disappearing. (Tr. 95) Plaintiff also asked for refills of medication, and refused requests to participate in group counseling. (*Id.*)

11

Moreover, as the ALJ found, this pattern was replicated when Plaintiff sought treatment elsewhere, including one incident in which she apparently pretended to have a stroke before a consultative exam. (Tr. 95-96) In short, after examining the entirety of Plaintiff's treatment history at Appalachian Community Services and elsewhere, the ALJ concluded that she "has a history of over-dramatizing and being less than truthful" with regard to her symptoms." (Tr. 97) Thus, her failure to mention the agency's assignment of two GAF scores to Plaintiff does not itself warrant reversal. However, the ALJ should consider the impact of these scores, if any, on remand.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 15) is **GRANTED**, Defendant's Motion for Summary Judgment (Doc. No. 17) is **DENIED**, and the Commissioner's decision is **VACATED**. This matter is remanded to the Social Security Administration for further proceedings consistent with this order.

Signed: September 13, 2016

Graham C. Mullen
United States District Judge